IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

Trustees of the SHEET METAL WORKERS
LOCAL UNION 49 FAMILY HEALTH PLAN,
the SHEET METAL WORKERS LOCAL UNION 49
DEFINED CONTRIBUTION PENSION PLAN, and
the SHEET METAL WORKERS LOCAL UNION 49
JOINT APPRENTICESHIP TRUST FUND,

 Plaintiffs,

v.                         CV 11-898 JCH/CG

MARES PLUMBING & MECHANICAL, INC.,

 Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** comes before the Court on *Plaintiffs' Motion 1) to Dismiss the Affirmative Defenses as Barred and Preempted by ERISA, 2) to Dismiss the Counterclaims as Preempted by ERISA, 3) to Dismiss the Fraud Counterclaim as not Pleaded with Specificity, 4) for Judgment on the Pleadings as to Liability, 5) to Strike or Dismiss the Jury Demand, 6) to Strike or Dismiss the Answer, Affirmative Defenses, and Counterclaims as Untimely Filed, 7) to Strike or Dismiss any Claims of Mark Mares as Immaterial, and 8) to Strike or Dismiss any Claim of Mark Mares as Preempted by Erisa*, (Doc. 13), *Defendant Mark Mares Plumbing & Mechanical Inc.'s Response in Opposition to Plaintiff's Motion and Supporting Memorandum*, (Doc. 17), and *Plaintiff's Reply to Defendant's Response in Opposition to Plaintiff's Motion to Dismiss*, (Doc. 28).

 Plaintiffs seek to dismiss or strike Defendant's answer, affirmative defenses, counterclaims, and jury demand. (Doc. 13 at 1). Plaintiffs argue that the answer should be

dismissed as untimely, that Defendant's counterclaims should be dismissed because they are preempted by the federal Employment and Retirement Income Security Act ("ERISA"). (*Id.*). Defendant has conceded liability on Plaintiff's claims and has waived its affirmative defenses. (Doc. 17 at 10 ¶ B). However, it contends that the counterclaims are not preempted by ERISA and are not subject to dismissal. The Court, having considered the parties' filings, the relevant law, and otherwise being fully advised in the premises, **RECOMMENDS** that Plaintiffs' motion should be **GRANTED**.

**I.      Background**

Plaintiffs are Trustees of three multiemployer ERISA employee benefit plans - the Sheet Metal Workers Local 49 Family Health Plan, Pension Plan, and Joint Apprentice Trust Fund (hereinafter "Trust Funds"). (Doc. 13 at 1-2 ¶ 3-5). The Trustees are made up of members from a labor organization, Sheet Metal Workers Local Union 49, and members of the New Mexico Sheet Metal Contractors' Association, Inc. (*Id.*). Neither the Union nor the Contractors' Association are parties to this lawsuit. The Trustees, as opposed to the Union or Contractors' Association, have a fiduciary relationship to the beneficiaries of the Trust Funds and, pursuant to ERISA, are the sole parties authorized to prosecute collection actions on behalf of the Trust Funds. *See, e.g.*, *Central States, SE and SW Areas Pensions Fund v. Central Transport, Inc.*, 472 U.S. 559, 571-72, 575-76 (1985); *NLRB v. Amax Coal Co.*, 453 U.S. 322, 329-334 (1981).

Plaintiffs' amended complaint alleges that Defendant Mares Plumbing & Mechanical, Inc., and representatives for Local Union 49 agreed to a collective bargaining agreement ("CBA") in February of 2011. (Doc. 7 at 2 ¶ 8, 3 ¶ 14). Pursuant to the CBA, Defendant

was required to contribute fringe benefit payments every month to the Trust Funds. (*Id.* at 3 ¶ 10). Defendant was also required to file a "payroll report" by the fourteenth day of each month for the preceding month. (*Id.* at 5 ¶ 19). Plaintiffs state that, between March and September of 2011, Defendant failed to pay its required contributions to the Trust Funds. (*Id.* at 4 ¶ 16). The complaint further states that Defendant's payroll reports were not timely filed between March and November of 2011. (*Id.* at 5 ¶ 19). Plaintiffs request injunctive relief and damages in the form of the unpaid contributions, interest, liquidated damages, late fees, and fees and costs associated with bringing this action. (*Id.* at 7-9 ¶ A-J). Plaintiffs' estimate of damages is based on an audit of Defendant's financial records for the period of March, 2011, to September, 2011. (*Id.* at 3-4 ¶ 15).

Defendant denies Plaintiff's allegations. In its answer, Defendant admits that it was bound to the CBA it signed with Local 49 and obligated to file timely report and make fringe benefits contributions in specific amounts. (Doc. 9 at 3, 6-10). Defendant admits that its contributions were delinquent and claims that, in November of 2011, it entered into negotiations with Local 49 "for payment of the delinquency of the contributions." (*Id.* at 10 ¶ 56). The parties purportedly agreed that Defendant would cover the delinquent contributions following an expected payment from a general contractor. (*Id.*).

Defendant asserts that Plaintiffs violated this agreement by later sending notices to Defendant's business clients stating that Defendant was delinquent in its contributions. (*Id.* at 11 ¶ 59). The notices were made pursuant to the Miller Act, 40 U.S.C. § 3131 *et seq.*, and Little Miller Act, NMSA 1978 § 13-4-10 *et seq.*, requesting that sums owed to Defendant be instead paid to the Trust Funds. (*Id.*). Defendant claims that the notices resulted in pecuniary loss as at least one client refused to provide owed funds to

Defendant. (*Id.* at 11 ¶ 61-62, 12 ¶ 68). Defendant also claims that, as a result of the dispute with Local 49, Mark Mares' health insurance with a separate union was cancelled. (*See Id.* at 5-6 ¶ 30-31 (stating that Mark Mares is a member of Local Union 412 and that he received health insurance through that union), 10 ¶ 58). Mark Mares is the owner of Defendant Mares Plumbing. (*Id.* at 2 ¶ 2).

In its answer, Defendant asserted two affirmative defenses: laches and estoppel. (*Id.* at 9 ¶ 58). It also asserts a number of state law counterclaims, including intentional interference with business relations, intentional interference with prospective business relations, defamation, fraud, and violation of the New Mexico Unfair Practices Act. (*Id.* at 11-16). Defendant requests punitive treble damages. (*Id.* at 11-17). The counterclaims are based on the economic loss resulting from the Miller Act notices and subsequent freezing of Defendant's business accounts as well as the retaliatory cancellation of Mark Mares' health insurance. (*Id.*).

II.     **Standard of Review**

    a.     **Motion to Dismiss**

Under rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). The sufficiency of a complaint is a question of law, and when considering and addressing a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party,

and draw all reasonable inferences in the plaintiff's favor. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006).

A complaint challenged by a rule 12(b)(6) motion to dismiss does not require detailed factual allegations, but a plaintiff's burden to set forth the grounds of his or her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (stating that a plaintiff's complaint must set forth more than a threadbare recital "of the elements of a cause of action, supported by mere conclusory statements"). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 545 (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

  **b.** **<u>Conversion to Motion for Summary Judgment</u>**

Defendant attached several exhibits to its response to the motion to dismiss. (Doc. 17 Exs. A-F). It claims that the exhibits support the factual allegations underlying the state law counterclaims. (Doc. 17 at 2). Defendant asserts that the Court could consider the exhibits if it were to convert Plaintiffs' motion into a motion for summary judgment and it urges the Court to do so. (*Id.* at 3). Plaintiffs have also attached exhibits to their reply but do not address Defendant's request to convert the motion to dismiss into a motion for summary judgment. (*See,* Doc. 28-1).

5

When evaluating a motion to dismiss, the Court may not consider any evidence outside of the complaint or the motion pleadings. *See* FED. R. CIV. P. 12(b)(6); *Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 (10th Cir. 1998). If a court intends to rely on evidence outside the complaint, it must convert the Rule 12(b)(6) motion into a motion for summary judgment and give proper notice to the parties. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). A court may, in its discretion, decline to consider evidence offered by a party which is outside of the complaint and may decline to convert the motion into a motion for summary judgment. *See Geras v. Int'l Bus. Mach. Corp.*, 638 F.3d 1311 (10th Cir. 2011) (holding that district courts are not required to consider evidence outside of the complaint even if the evidence is relevant to the claims in the complaint.); *Prager v. LaFaver*, 180 F.3d 1185, 1189 (10th Cir. 1999) (collecting cases). In this instance, the motion to dismiss is based on a question of law: whether the counterclaims are preempted by ERISA. Because the exhibits relate to the merits of the counterclaims and are not relevant to the question of preemption, the Court will decline to consider the exhibits and will not convert Plaintiffs' motion into a motion for summary judgment.

**III.   Analysis**

   **a.   Dismissal of Affirmative Defenses**

Plaintiffs move for the dismissal of Defendant's affirmative defense of laches and estoppel on the theory that they are preempted by ERISA. (Doc. 13 at 8-11). Defendant did not address this argument in its response, it merely waived both affirmative defenses. (Doc. 17 at 10 ¶ B). In ERISA cases involving attempts to recover delinquent fringe benefit contributions, courts generally recognize only two affirmative defenses - that the fringe

6

benefits contributions are illegal or that the CBA was void. *See Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 314 (2d Cir. 1990) (collecting cases). Traditional contract and tort defenses such as laches and estoppel are not available in ERISA actions brought by the trustees of multiemployer trust funds. *Bakery & Confectionary Union & Indus. Int'l Pension Fund v. Ralph's Grocery, Co.*, 118 F.3d 1018, 1021 (4th Cir. 1997); *Cent. States, Southeast & Southwest Areas Pension Fund v. Gerber Truck Svc., Inc.*, 870 F.2d 1148, 1149 (7th Cir. 1989). Because the affirmative defenses are preempted by ERISA and because Defendant voluntarily waived its affirmative defenses, the Court recommends that Defendant's affirmative defenses of laches and estoppel be dismissed.

### b. Dismissal of Counterclaims

In its answer, Defendant claims that Plaintiffs were neither justified nor privileged to send out the deficiency notices to Defendant's business clients. (*See, e.g.*, Doc. 9 at 11 ¶ 63). As a result of the deficiency notices, Defendant claims that its reputation was damaged and that it suffered at least $47,380.00 in pecuniary losses. (*Id.* at 11-16). Defendant has asserted state law counterclaims for intentional interference with business relations, intentional interference with prospective business relations, defamation, and the New Mexico Unfair Practices Act. (*Id.*).

Plaintiffs assert that all of Defendant's counterclaims are preempted by ERISA because the counterclaims either "relate to" the administration of the benefit plan or because the civil remedies provided for under ERISA are the sole means of vindicating Defendant's claims. (*See, generally*, Doc. 13 at 11-15). Defendant counters that its state law counterclaims do not turn on an interpretation of the CBA and are therefore not preempted under the Labor Management Relations Act. (Doc. 17 at 5-8). It further argues

that Mark Mares' fraud counterclaim is not preempted because § 510 of ERISA makes it unlawful to "discriminate" against a participant or beneficiary (1) "for exercising any right to which he is entitled" under the plan or (2) for the purpose of "interfering" with the attainment of any right to which such participant may become entitled under the plan. (*Id.* at 9-10 (citing 29 U.S.C. § 1140)).

ERISA is a "comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983). Its purpose is to provide a "uniform regulatory regime over employee benefit plans" and, to this end, ERISA provides expansive preemption provisions which are intended to ensure that regulation of benefit plans is an "exclusively federal concern." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). Courts have broadly distinguished between two types of preemption created by ERISA: "Conflict Preemption" and "Complete Preemption." *Felix v. Lucent Tech., Inc.*, 387 F.3d 1146, 1153 (10th Cir. 2004). Since the two concepts are frequently confused, and both are implicated in this case, a brief review of the two doctrines is instructive.

    i.    **<u>Conflict Preemption</u>**

Conflict preemption is established by ERISA's broadly worded preemption clause, which states: "[e]xcept as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plans . . ." 29 U.S.C. § 1144(a). The Supreme Court has "observed repeatedly that this broadly worded provision is 'clearly expansive'" *Egelhoff v. Egelhoff*, 532 U.S. 141, 146 (2001). A state law claim "relates" to an ERISA plan "if it has a connection with or reference to such a plan." *Shaw*,

463 U.S. at 97.

However, the Court has cautioned that "the term 'relate to' cannot be taken 'to extend to the furthest stretch of its indeterminacy . . .'" *Id.* (quoting *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins.*, 514 U.S. 645, 655 (1995)). Courts are instead instructed to "look both to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as to the nature of the effect of the state law on ERISA plans." *Egelhoff*, 532 U.S. at 147. The preemption provision will not bar a state law claim "if the state law has only a tenuous, remote, or peripheral connection with covered plans, as is the case with many laws of general applicability." *Felix*, 387 F.3d at 1154 (quoting *District of Columbia v. Greater Wash. Bd. of Trade*, 506 U.S. 125 n. 1 (1992)).

### ii.    Complete Preemption

The complete preemption doctrine arises from the remedial scheme outlined in Section 502(a) of ERISA.[1] The Supreme Court found that the purposes of ERISA would be undermined if litigants were allowed to assert state law claims or remedies which duplicated, supplemented, or went beyond the specific remedies provided for in ERISA. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987); *Aetna*, 542 U.S. at 209.

Because complete preemption is dependent on the availability of a cause of action under Section 502, it is limited to claims "by a participant or beneficiary" of an ERISA-regulated plan "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan or to clarify his rights to future benefits under the terms

---

[1] Section 502(a) of the ERISA statutes is codified at 29 U.S.C. § 1132(a).

of the plan." *Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1221-22 (10th Cir. 2011) (citing 29 U.S.C. § 1132(a)(1)(B)). A state law claim is completely preempted if: i) the claimant could have been able to assert the claim under § 502(a)(1)(B) at some point and, ii) "no other independent legal duty . . . is implicated by [the adversary's] actions." *Aetna*, 542 U.S. at 210.

With those doctrines in mind, the Court turns to the question of whether Defendant's counterclaims are preempted under ERISA.

### iii.     Defendant Mares Plumbing's Counterclaims

The Court first turns to the counterclaims asserted by Defendant Mares Plumbing, as opposed to the sole counterclaim asserted against Mark Mares personally. As noted above, Defendant claims that Plaintiffs are liable in tort for sending the deficiency notices to Defendant's business clients. (Doc. 9 at 11-16). It has asserted claims for intentional interference with both business and prospective business relations, defamation, and the New Mexico Unfair Practices Act.

Plaintiffs argue that these four counterclaims are preempted by ERISA. Although they do not refer to either doctrine by name, they appear to assert both conflict preemption and complete preemption theories for dismissal. (*See*, Doc. 13 at 11 (stating that the counterclaims "relate to" the Trustees' benefit plans while also citing to § 502(a), the remedies section of ERISA, and stating that the civil remedies were intended to be exclusive)). Defendant, having somehow misapprehended that the motion was based on ERISA preemption, focused curiously and exclusively on caselaw regarding preemption under the Labor Management Relations Act ("LMRA"). (Doc. 17 at 5-8). Needless to say, Defendant's response adds little to the Court's analysis. ERISA and the LMRA are entirely

separate statutes, providing different remedies, and the Court fails to see how Defendant's analysis of LMRA caselaw materially addresses Plaintiffs' contentions regarding ERISA preemption.

The Court first turns to the complete preemption analysis. As noted, complete preemption is premised on the fact that the state law claims could have been brought under ERISA's enforcement section and are therefore preempted. *Aetna*, 542 U.S. at 209. By its express terms, enforcement claims under § 502(a) of ERISA are limited to "a participant or beneficiary" of an employee benefit plan. 29 U.S.C. § 1132(a)(1). Defendant Mares, as an employer providing contributions into the Trust Funds, is neither a participant nor a beneficiary in those plans. Mares does not administer the distribution of funds under the Trust Funds and is not authorized to receive any benefits from them. Because Defendant is not a plan participant and has no standing to assert a claim under § 502(a), complete preemption is not applicable to the state law counterclaims. *See, e.g.*, *Southern Ill. Carpenters Welfare Fund v. Carpenters Welfare Fund of Ill.*, 326 F.3d 919, 922 (7th Cir. 2003) (employer have no standing to sue under § 502(a)); *Jamail, Inc. v. Carpenters Dist. Council of Houston Pension and Welfare Trusts*, 954 F.2d 299, 302 (5th Cir. 1992).

The Court then turns to the more difficult question of whether the counterclaims are conflict preempted because they "relate to" the management of the Trust Funds. The Tenth Circuit has identified four types of laws which "relate to" the management of an ERISA plan and are therefore preempted:

> First, laws that regulate the type of benefits or terms of ERISA plans. Second, laws that create reporting, disclosure, funding, or vesting requirements for ERISA plans. Third, laws that provide rules for the calculation of the amount of benefits to be paid under ERISA plans. Fourth, laws and common-law rules that provide remedies for misconduct growing out of the administration of the ERISA plan.

11

*Pacificare of Okla., Inc. v. Burrage*, 59 F.3d 151, 154 (10th Cir. 1995) (quoting *National Elevator Indus., Inc. v. Calhoon*, 957 F.3d 1555, 1558-59 (10th Cir. 1992)). Defendant's state law claims can be described as "common-law rules that provide remedies for misconduct growing out of the administration of the ERISA plan." All of the counterclaims are based on actions taken by Plaintiffs in an attempt to administer the Trust Funds, i.e. recover the delinquent contributions by sending out deficiency notices to Defendant's business clients. By challenging the propriety of the deficiency notices, Defendant would have the court find that Plaintiffs committed misconduct in their administration of the Trust Funds. This creates the type of causal connection between the state law claim and the substantive administration of the benefit plan that ERISA's conflict preemption was meant to avoid. *See, e.g.*, *Settles v. Golden Rules Ins. Co.*, 927 F.2d 505, 509 (10th Cir. 1991) ("Although plaintiff is not seeking benefits under the insurance policy, her claims require a finding that defendant wrongfully terminated Mr. Settles' insurance coverage. Therefore, the claims relate to the employee benefit plan."); *Tingey v. Pixley-Ricards West, Inc.*, 953 F.3d 1124, 1331 n. 2 (9th Cir. 1992) ("So long as Tingey's underlying theory of the case revolves around the denial of benefits, his claim falls under ERISA's far reaching preemption clause."); *Smith & Green Corp. v. Tr. of Constr. Indus. & Laborers Health & Welfare Trust*, 244 F.Supp.2d 1098 (D. Nev. 2003) (state tort claims asserted against ERISA trustee for sending out deficiency notices to plaintiff's business clients preempted under ERISA because they relate to the administration of the benefits plan).

      The Court finds that Defendant's counterclaims "relate to" the Trust Funds because the claims are based solely on the Trustees acting to administer the Trust Funds by enforcing Defendant's contribution requirements. Considering the "clearly expansive"

interpretation of ERISA's preemption clause, the Court concludes that the counterclaims are preempted. *Egelhoff*, 532 U.S. at 145. The Court therefore recommends that Defendant Mares Plumbing's counterclaims be dismissed.

### iv. Mark Mares' Counterclaim

In addition to the state law counterclaims asserted by Defendant Mares Plumbing, the owner of the company, Mark Mares, has asserted a state law counterclaim for fraud arising out of the cancellation of his medical insurance. (Doc. 9 at 14-15). Mark Mares is a member of Local Union 412, which is not a party to this action and which is not related to Local Union 49. He receives medical insurance through Local 412's employee health care plan and he alleges that Local 412 fraudulently cancelled his medical insurance "in retaliation for the dispute with Local 49." (*Id.*).

Plaintiffs present several theories for dismissing this counterclaim: i) it is preempted by ERISA, ii) Mark Mares is not a party to this litigation and therefore cannot assert a counterclaim in this case,[2] and iii) even if the fraud claim were not preempted by ERISA, the allegations fail to state a claim upon which relief can be granted because they are not pled with sufficient specificity or with the requisite factual basis. (Doc. 13 at 4-6, 11-15). Defendant replies that the counterclaim "survives scrutiny" because the claim can be sustained under Section 502(a) and Section 510 of ERISA. (Doc. 17 at 9-10). As noted above, Section 502 provides that a plan participant or beneficiary may sue to recover benefits due to him under the plan. 29 U.S.C. § 1132(a). Section 510 prohibits a party from canceling a plan participant's benefits or interfering with the attainment of those benefits

---

[2] Defendant Mares Plumbing has since filed a motion seeking to join Mark Mares as a necessary party to the litigation so that he might pursue his fraud counterclaim. (*See* Doc. 25)

in retaliation for exercising a right which is due to him under the plan. 29 U.S.C. § 1140.

Setting aside for a moment the fact that Mark Mares is not yet a party to this litigation, the Court finds that the state law counterclaim is completely preempted. As noted above, a state law claim is completely preempted when it could have properly been brought under ERISA's remedial scheme. *Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1221-22 (10th Cir. 2011). Defendant claims that the fraud claim could be sustained under Section 502 of ERISA since it involves a suit by a participant to recover benefits due to him under the terms of his plan. (Doc. 17 at 9-10). However, even if the Court were to convert the claim to one arising under ERISA or assume that Mark Mares intended to bring it under ERISA, the counterclaim must still be dismissed because it fails to state a claim upon which relief can be granted.

The fatal deficiency in Mark Mares' claim, whether brought under state tort law or ERISA, is straightforward - it fails to adequately assert that Plaintiffs are responsible for the cancellation of his medical insurance. As previously noted, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim can only be considered plausible when the facts alleged enables the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The Court finds that the answer and counterclaim fail to assert any facts which could reasonably lead to the inference that Plaintiffs caused Local Union 412 to cancel his health insurance. Beyond asserting that Local 412 cancelled his insurance "in retaliation for the dispute with Local Union 49[,]" Defendant has not presented any facts connecting Plaintiffs to the purportedly improper cancellation. Local 412 is a separate entity and has no relation

to Plaintiffs or to Local Union 49. Even assuming that Local 412 did cancel Mark Mares' health insurance in retaliation for his dispute with Plaintiffs and Local 49, quite a inferential leap to be sure, Defendant has not pled any facts which could lead to the inference that Plaintiffs *caused* Local 412 to make that decision. Defendant has therefore failed to assert a claim upon which relief may be granted and the Court recommends that the fraud counterclaim be dismissed.

### c. Defendant's Jury Demand

Plaintiffs ask that Defendant's jury demand be struck. (Doc. 13 at 15-16). In support, they reiterate that Defendant's various state law counterclaims are preempted by ERISA or asserted against improper parties. (*Id.*). Without citing any authority, Defendant argues that the counterclaims are not preempted by ERISA and that it has a right to a jury trial. (Doc. 17 at 8).

The Court notes that Defendant conferred with Plaintiffs in the preparation of a joint status report and the parties agreed that this was a non-jury case and would be tried before a judge. (Doc. 14 at 12). Under the Federal Rules of Civil Procedure, this stipulation precludes Defendant's later request for a jury trial. FED. R. CIV. P 39(a)(1) (Stating that a party may demand a jury trial "unless the parties or their attorneys file a stipulation to a nonjury trial . . ."). Even if the parties had not stipulated to a bench trial, Defendant's jury trial should be struck as untimely because it was not filed within fourteen days of receipt of Plaintiffs' amended complaint. FED. R. CIV. P. 38(b)(1) ("[A] party may demand a jury trial by serving the other parties with a written demand . . . no later than 14 days after the last pleading directed to the issue is served."). Moreover, the Court has already found that the state law counterclaims are either preempted by ERISA or must be dismissed for failure

to state a claim upon which relief can be granted. Defendant may not sustain a jury demand for claims which have been dismissed. The Court therefore recommends that the jury demand be struck.

### d. Judgment on Liability

Plaintiffs move for the Court to enter Judgment on the pleadings as to liability only pursuant to Fed. R. Civ. P. 12(c)(2). (Doc. 13 at 15). In its response, Defendant admits liability but contests the amount of damages owed. (Doc. 17 at 10). For this reason, the Court recommends that judgment be entered in Plaintiffs' favor on the issue of liability.

### e. Striking Defendant's Answer

In addition to requesting that Defendant's affirmative defenses, jury demand, and state law counterclaims be dismissed, Plaintiffs asks that the Court dismiss the Defendant's entire answer as untimely. (Doc. 13 at 16-8). There is no doubt that Defendant's answer was untimely filed. Defendant's accepted service on January 10, 2012, making their answer due no later than January 31, 2012. (Doc. 13 at 5); FED. R. CIV. P. 12(a)(1)(A)(i). Defendant did not file its answer until February 10, 2012, ten days late. (Doc. 9). Plaintiffs allege that, in light of Defendant's failure to seek an extension of time for good cause or demonstrate excusable neglect for the late filing, the answer should be struck. (*Id.*). Defendant responds that, because Plaintiffs never filed a motion for default judgment prior to the late entry of the answer, the request should be denied.

Under Rule 6(b) of the Federal Rules of Civil Procedure, a district court may accept a late filing if it finds that the filing resulted from "excusable neglect." To determine what constitutes excusable neglect, the Court must consider all relevant circumstances

surrounding the late filing. *City of Chanute, Kan. v. Williams Natural Gas Co.*, 31 F.3d 1041, 1045-46 (10th Cir. 1994) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)). Factors relevant to determining whether Defendant has shown excusable neglect include: "1) the danger of unfair prejudice to the [opposing] party; 2) the length of the delay and its potential impact on judicial proceedings; 3) the reason for the delay, including whether it was within the reasonable control of the movant; and 4) whether the movant acted in good faith." *Id.* The decision is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer*, 507 U.S. at 395.

In this case, the Court finds that the equities weigh in favor of striking Defendant's answer as untimely. The first factor, danger of unfair prejudice to the Plaintiffs, weighs slightly in favor of striking the answer. Plaintiffs claim that, after the filing deadline passed, they began "preparing the Clerk's Notice of Default, Affidavit of Sum Certain, and Praecipe . . . " (Doc. 13 at 17). Defendant's failure to file the answer in a timely fashion forced Plaintiffs to needlessly waste resources preparing the appropriate papers for a default judgment. The second factor, length of delay and potential impact on judicial proceedings, weighs against striking the answer. The answer was only filed ten days late and did not unduly delay the proceedings. The fourth factor, bad faith, also does not weigh in favor of striking the answer. Although the answer was filed late and Defendant's counsel has repeatedly missed deadlines in this case, there is no indication that Defendant or its counsel have acted in bad faith.

The Court finds that the third factor, the reason for the delay and whether it was within the reasonable control of the movant, weighs heavily in favor of striking the answer.

The Tenth Circuit has held that "fault in the delay remains a very important factor - perhaps the most important single factor - in determining whether neglect is excusable." *City of Chanute*, 31 F.3d at 1046. Defendant has made no effort to explain why it failed to file its answer in a timely fashion and provides no excuse for the omission. It merely states that "the [untimely] filing of the answer and counterclaims did not prejudice the Plaintiffs , and as no motion for default judgment was filed . . . the answer and counterclaims should not be striken [sic]." (Doc. 17 at 10-11). Contrary to Defendant's assertion, the untimely filing did prejudice Plaintiffs because it forced them to prepare default papers. More importantly, Defendant's response does not even attempt to explain why it should not be held at fault for missing the deadline to file its answer.

The case of *United States v. Torres* is instructive. In that case a defendant pled guilty to a criminal drug charge but his notice of appeal was filed 18 days after the deadline had passed. *Torres*, 372 F.3d 1159, 1160, 1163 (10th Cir. 2004).[3] The delay was due to defense counsel confusing the filing deadlines for civil and criminal appeals. *Id*. The district court found that, on balance, defendant had demonstrated excusable neglect for failing to file a timely appeal. The Tenth Circuit held that the district court had abused its discretion and reversed. The Circuit held that, while three of the four factors weighed in favor of excusing the late filing, fault in the delay was the most important factor to be considered.

---

[3] The Court notes that, while *Torres* was a criminal case, the analysis is directly applicable to this case. The standard in *Torres* and the instant case is the same - whether the late filing party has demonstrated "excusable neglect." FED. R. APP. 5(A)(ii); FED. R. CIV. P. 6(b)(1)(B). The *Torres* court recognized that, although the *Pioneer* factors were developed by the Supreme Court in the context of a bankruptcy appeal, the four part test was one of general applicability. *Torres*, 372 F.3d at 1162-63. The Tenth Circuit has cited to *Torres* approvingly numerous times in civil cases. *See* ; *Hamilton v. Water Whole Intern. Corp.*, 302 F. App'x 789, 798 (10th Cir. 2008)*; Quigley v. Rosenthal*, 427 F.3d 1232*,* 1238 (10th Cir. 2005); *Delta Airlines v. Butler*, 383 F.3d 1143, 1145 (10th Cir. 2004).

*Id.* (citing *Graphic Comm. Int'l Union v. Quebecor Printing Providence, Inc.*, 270 F.3d 1, 5 (1st Cir. 2001) ("We have observed that the four *Pioneer* factors doe not carry equal weight; the excuse given for the late filing must have the greatest import.")). Finding that ignorance of the rules was obviously the fault of defendant's attorney, the Tenth Circuit ruled that the appeal should be dismissed.

In addition to the four *Pioneer* factors, the Tenth Circuit has also held that courts may "take into account whether the mistake was a single unintentional incident (as opposed to a pattern of deliberate dilatoriness and delay) and whether the attorney attempted to correct his action promptly after discovery the mistake." *Jennings v. Rivers*, 394 F.3d 850, 857 (10th Cir. 2005). In this case, the late answer was but the first of several late filings and failures to follow court orders on the part of Defendant's counsel. Defendant's response in opposition to the motion to dismiss was filed late and, in seeking an extension of time from the Court, Plaintiffs claim that Defendant's counsel affirmatively lied to the Court regarding the circumstances of its late filing. (Doc. 18 at 1, 3). Defendant's counsel failed to file the initial disclosures in accordance with the Court's *Initial Scheduling Order* and failed to appear at a status conference set by the Court as well. (Doc. 11; Doc. 14; Doc. 39). These persistent failures fit the pattern of dilatoriness and delay which the Tenth Circuit has identified as relevant to the question of whether late filings should be stricken. *Jennings*, 394 F.3d at 857. Therefore, having considered the circumstances regarding the late answer and noting that Defendant has made no effort to explain or excuse the late filing, the Court recommends that the answer be struck.

**IT IS THEREFORE RECOMMENDED THAT** Plaintiffs' *Motion to Dismiss*, (Doc. 13),

be **GRANTED** and that:

    i) All affirmative defenses asserted in the answer be dismissed;

    ii) All counterclaims asserted in Defendant's answer be dismissed;

    iii) Defendant's jury demand be struck;

    iv) The Court enter judgment in Plaintiffs' favor on the issue of liability only; and

    v) That Defendant's answer be struck as untimely filed.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE