## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**Trustees of the SHEET METAL WORKERS
LOCAL UNION 49 FAMILY HEALTH PLAN,
the SHEET METAL WORKERS LOCAL UNION 49
DEFINED CONTRIBUTION PENSION PLAN, and
the SHEET METAL WORKERS LOCAL UNION 49
JOINT APPRENTICESHIP TRUST FUND,**

        **Plaintiffs,**

**vs.**                                **Civ. No. 11-898 JCH/CG**

**MARES PLUMBING & MECHANICAL, INC.,**

        **Defendant.**

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Plaintiffs' *Motion for Summary Judgment Against Defendant and Supporting Memorandum* (Doc. 68).  In the underlying collection action, Plaintiffs, trustees of three health and pension plans serving the members of Sheet Metal Workers Local Union No. 49 ("Local 49" or "the Union"), contend that Defendant, an employer of Local 49 members, violated a collective bargaining agreement ("CBA") between the parties by failing to pay required fringe benefit contributions to the three trust funds.  This Court has already entered judgment in favor of Plaintiffs on the issue of liability, and has dismissed Defendant's affirmative defenses and counterclaims.  *See* Docs. 44, 55.

On the instant motion, Plaintiffs move the Court for a summary judgment as to the amounts owed them by Defendant through September 2012 in delinquent fringe benefit contributions, liquidated damages, audit fees, litigation costs, and attorneys' fees.  Plaintiffs further seek injunctive relief pursuant to 29 U.S.C. § 1132(g)(2)(E) and the federal Employment

and Retirement Income Security Act ("ERISA"), § 502(g)(2)(E), compelling Defendant to (1) deliver reports for all sheet metal work performed to date, (2) identify every project on which it has worked, including the name and address of the general contractor/owner, (3) pay additional delinquent fringe benefit contributions accrued since September 2012, and (4) cease and desist working in the sheet metal craft industry until all contributions and reports are brought current. The Court, having considered the motion, briefs, exhibits, and relevant law, and being otherwise fully informed, finds that Plaintiffs' motion should be granted in part and denied in part.

## FACTUAL BACKGROUND

Plaintiffs are trustees of three multi-employer, collectively bargained-for trust funds as defined by the ERISA,  29 U.S.C § 1002(1) - § 1002(2): (1) the Sheet Metal Workers Local Union 49 Family Health Plan ("Family Health Plan"), (2) the Sheet Metal Workers Local Union 49 Defined Contribution Pension Plan ("Defined Contribution Pension Plan"), and (3) the Sheet Metal Workers Local Union 49 Joint Apprenticeship Trust Fund ("Apprenticeship Trust Fund") (collectively, "the Trust Funds").  All three Trust Funds qualify as tax-exempt entities as determined by the U.S. Department of the Treasury, and as such were established to collect employer contributions for the purpose of providing benefits to the participants and their dependents.  The Union is not a party to this lawsuit.[1]

Defendant Mares Plumbing and Mechanical, Inc. is a provider of sheet-metal craft and an employer within the meaning of §§ 3(5) and 515 of ERISA, 29 U.S.C §§ 1002(5) and 1145.

---

[1]The Trustees, as opposed to the Union, have a fiduciary relationship to the beneficiaries of the Trust Funds, and pursuant to ERISA, are the sole parties authorized to prosecute collection actions on behalf of the Trust Funds.  *See NLRB v. Amax Coal Co.*, 453 U.S. 322, 329-34 (1981).

**Parties Enter CBA**

On February 11, 2011, Defendant's principal, Mark Mares, executed a written CBA with Local 49, setting forth the terms under which employees would  provided sheet metal work to Defendant.  The CBA further incorporated Trust Fund Agreements and Declarations of Trust providing for Defendant's payments of employer contributions to the Trust Funds established on the employees' behalf.

**Relevant Provisions of the CBA**

Pursuant to the CBA, Defendant was required to pay fringe benefit contributions for each hour of employee work at a designated rate each month.   The hourly fringe-benefit contribution rates, as set forth in Wage Schedules attached to and incorporated in the CBA, were:

A.     $6.67 to the Family Health Plan for the period April 1, 2010 through
       March 31, 2011;

B.     $4.67 to the Family Health Plan for the period April 1, 2011 through
       March 31, 2013;

C.     $0.50 to the Defined Contribution Pension Plan for the period April 1,
       2008 through March 31, 2013;

D.     $0.42 to the Apprenticeship Trust Fund for the period April 1, 2008
       through March 31, 2013.

 The Trust Agreements incorporated into the CBA provided that, in the event of delinquent contributions by Defendant, Plaintiffs were entitled to collect all of the delinquent fringe benefit contributions plus interest, liquidated damages, attorneys' fees, audit fees, and court costs.  Interest on the delinquencies owed to the Trust Funds was to be calculated at 18% per annum until the delinquent fringe benefits were paid.   Liquidated damages on the delinquencies owed past sixty (60) days were to be calculated at the rate of 1.17% per month, compounded monthly, until the delinquent fringe benefits were paid.

3

**Defendant's Delinquency**

On a date not specifically set forth by the parties, Defendant became delinquent in its payment of fringe benefit contributions to Plaintiffs.  Plaintiffs sent demand letters to Defendant, and further, sent notices to Defendant's general-contractor clients informing them of Defendant's delinquency and requesting that any sums the clients owed to Defendant be instead paid to the Trust Funds.  Plaintiffs sent these notice letters pursuant to the Miller Act, 40 U.S.C.A. § 3131 et seq, and the New Mexico Public Works Minimum Wage Act or "Little Miller Act," NMSA 1978 (2009) §§ 13-4-10 to 13-4-24 (2011 Cum. Supp.).  Both the Miller Act and Little Miller Act have a 90-day notice provision from the end of work and a one-year statute of limitations.

On October 7, 2011, Plaintiffs filed the instant action, seeking injunctive relief and damages in the form of the unpaid contributions, interest, liquidated damages, late fees, audit fees, attorneys' fees, and costs associated with bringing suit.

**May 2012 Audit of Defendant Incorporates Findings of Three Separate Audits**

Plaintiffs engaged the services of an accounting firm, Cleveland Estes Avellone PC, to conduct a targeted audit of Defendant's books and records.  On December 16, 2011; April 30, 2012; and May 21, 2012, Certified Public Accountant Robert Baldwin performed  payroll audits of Defendant.  The December 16, 2011 audit covered the period from March 1, 2011 through November 30, 2011; the April 30, 2012 audit covered the period from February 1 through April 4, 2012; and the May 21, 2012 audit covered the period from March 1, 2011 through May 9, 2012, and incorporated the results of the December 16, 2011 and the April 30, 2012 audits.

**October 2012 Supplemental Audit**

On October 8, 2012, in the course of performing a supplemental audit incorporating

4

additional financial information provided by Defendant during the course of discovery, Baldwin

discovered that Defendant had worked additional hours on sheet metal projects after the most

recent (May 2012) audit.  Specifically, discovery revealed that (1) In July and August 2012,

Defendant worked at least 371 additional sheet metal worker hours on an unidentified project or

projects, and (2) from the period July 5, 2012 - September 12, 2012, Defendant worked

additional hours on the "Sweeney School Project" in Santa Fe.

The October 8, 2012 supplemental audit covers projects for the period July 5, 2012

through September 12, 2012; incorporates the previously audited periods from March 1, 2011

through May 9, 2012; and reflects payments of fringe benefit contributions and any interest, or

liquidated damages, recovered from the general contractors.

### Monies Recovered To Date

As of the date of the instant Motion, Plaintiffs have recovered payments totaling

**$7,524.71** ($5,863.05 in delinquent fringe benefit contributions, $933.54 in interest, and $728.12

in liquidated damages) from two of Defendant's clients through negotiations, lawsuits or claims

brought pursuant to the Miller Act or Little Miller Act.

### Pending Miller Act and Little Miller Act Suits

Plaintiffs continue to pursue legal action against Defendant's clients.  One Miller Act

lawsuit, filed in this Court, was recently consolidated with the instant action.  *See United States

ex rel., Trustees of the Sheet Metal Workers Local Union 49 Family Health Plan, et al., v. Rues

Mechanical P&H, et al.*, United States District Court for the District of New Mexico; Cause No.

1:12-cv-00881 KBM/WDS.  Another Little Miller Act lawsuit is pending in state court.  *See

State ex rel., Trustees of the Sheet Metal Workers Local Union 49 Family Health Plan, et al., v.

AIC General Contractors, Inc.,* 2nd Judicial District Court, County of Bernalillo, State of New

Mexico; Cause No. D-202-CV-2012-07597.  Further, one other Little Miller Act claim is outstanding, though the parties do not set forth any details about the claim.

### Remaining Fringe Benefit Contributions Owed[2]

Defendant's financial information obtained on discovery reflects that it owes $31,328.49 in fringe benefit contributions through September 12, 2012. As of October 8, 2012, Defendant's late filing fees, liquidated damages, and interest on the delinquent contributions totals $10,688.56. Thus, taken together, Defendant owes a total of **$42,017.05** in delinquent fringe benefit contributions, interest, liquidated damages and late fees as of October 8, 2012.

Defendant does not specifically controvert Plaintiffs' breakdown of the monies owed as follows:

A.   ***Family Health Plan***:

   **$27,493.77** in unpaid fringe benefits contributions through September 12, 2012;

   **$4,641.45** in interest at 18% per annum (1.5% monthly) on those delinquent fringe benefit contributions, calculated through October 8, 2012;

   **$3,620.28** in liquidated damages of 1.17% per month, compounded monthly, calculated though October 8, 2012.

B.   ***Defined Contribution Pension Plan***:

   **$1,738.50** in unpaid fringe contributions through September 12, 2012;

---

[2]Defendant does not specifically controvert Plaintiffs' calculations.  Rather, Defendant offers its own accounting of the remaining monies owed, though admitting that its figures reflect deductions for non-unionized employees.  Defendant contends that, pursuant to the terms of an oral contract it formed with Local 49 after entering the CBA, it was authorized to hire non-union members and exclude them from fringe benefits.  Pursuant to Rule 56.1(b) of the Rules of the U.S. District Court for the District of New Mexico, "[a]ll material facts set forth in the statement of the movant will be deemed admitted unless specifically controverted."  Accordingly, the Court deems Plaintiffs' calculations admitted, and addresses Defendant's oral-contract argument, *infra*.

**$366.37** in interest at 18% per annum (1.5% monthly) on those delinquent fringe benefit contributions, calculated through October 8, 2012;

**$285.76** in liquidated damages of 1.17% per month, compounded monthly, calculated though October 8, 2012.

C.     ***Apprenticeship Trust Fund***:

**$2,096.22** in unpaid fringe contributions through September 12, 2012;

**$384.67** in interest at 18% per annum (1.5% monthly) on those delinquent fringe benefit contributions, calculated through October 8, 2012;

**$300.03** in liquidated damages of 1.17% per month, compounded monthly, calculated though October 8, 2012.

D.     ***Late Filing Fees***:

**$1,090.00** in late filing fees.

**<u>Plaintiffs' Audit Fees, Court Costs, and Attorneys' Fees</u>**

Plaintiffs have incurred  **$5,688.94** in audit fees through October 9, 2012.

Plaintiffs have incurred **$1,594.77** in litigation costs through the filing of the instant motion (including filing and service fees of $612.15 in this lawsuit, $435.00 in filing and service fees in the *Rues Mechanical Miller Act* lawsuit, $167.00 in filing and service fees in the *AIC General Contractors* lawsuit, and $380.62 in Miller Act notice fees).

Plaintiffs' attorneys represent that they have expended 204.17 hours of attorney time at an hourly rate of $300.00, and 123.10 hours of legal assistant time at an hourly rate of $100.00, through September 26, 2012.[3]  The total amount claimed for the legal work is **$61,251.00** in attorneys' fees, **$12,310.00** in legal assistant fees, and **$5,149.27** in total gross receipts tax.

---

[3]Plaintiffs proffer the affidavit and billing invoices of attorney William G. Walker in support of their proposed fee award.  Defendant does not challenge Plaintiffs' attorneys' hours expended or the reasonableness of their hourly rates.

Defendant does not specifically dispute that it continues to work in Santa Fe under the CBA, and is still not filing timely or accurate reports or making any fringe benefit contributions.

## **RELEVANT PROCEDURAL HISTORY**

On October 7, 2011, Plaintiffs filed the instant action.  In its Answer, Defendant admitted that it was bound by the CBA and that its fringe benefit contributions were delinquent. However, Defendant claimed that it entered negotiations with Local 49 in November 2011 to settle Defendant's debts, and that the parties purportedly reached an oral agreement that Defendant would cover the delinquent contributions upon its receipt of an expected payment from a general contractor.  According to Defendant, Plaintiffs violated their oral agreement by noticing Defendant's clients as to its delinquency and requesting that sums owed to Defendant be instead paid to the Trust Funds.  Defendant asserted affirmative defenses of laches and estoppel, in addition to state law counterclaims for, *inter alia,* intentional interference with business relations, defamation, fraud, and violation of the New Mexico Unfair Practices Act. Plaintiffs subsequently moved to dismiss Defendant's affirmative defenses and counterclaims as barred and/or preempted by ERISA, which contains an express preemption clause providing that any state law claim which "relate[s] to any employee benefit plan" is preempted by the statute. *See* 29 U.S.C. § 1144(a).

On May 31, 2012, a U.S. Magistrate Judge issued a *Proposed Findings and Recommended Disposition* ("PFRD"), which recommended that Plaintiffs' motion to dismiss be granted because, (1) Defendant's counterclaims were preempted by ERISA and (2) Defendant's affirmative defenses were waived, and would, in any event, have been preempted by ERISA regardless.  (Doc. 44). The Magistrate Judge further recommended that Defendant's Answer be

8

struck as untimely filed.  *Id*.  On August 12, 2012, this Court issued an order adopting the PFRD and entering judgment in Plaintiffs' favor on the issue of liability only.  (Doc. 55).

## **LEGAL STANDARD**

### **Summary Judgment**

Rule 56(c) of the Federal Rules of Civil Procedure requires that summary judgment be rendered "where no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law."  *Hackworth v. Progressive Cas. Ins. Co.*, 468 F.3d 722, 725 (10th Cir. 2006); *see also* Fed. R Civ. P. 56(c)(2).  The moving party bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (internal quotation and marks omitted).  Once this burden has been met, "the burden shifts to the nonmoving party to show that there is a genuine issue of material fact.  The party opposing the motion must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor."  *Id.  See also Clifton v. Craig,* 924 F.2d 182, 183 (10th Cir. 1993).  It is not enough for the nonmoving party to "rest on mere allegations or denials of his pleadings" to avoid summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *see also West v. New Mexico Taxation and Rev. Dept.*, No. Civ. 09-0631, U.S. Dist. LEXIS 131626, at *42 (D.N.M., Oct. 31, 2010) ("[n]or can a party avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation") (internal quotation and marks omitted). In reviewing a motion for summary judgment, the court must "examine the factual record and draw reasonable inferences therefrom in the light most favorable to the nonmoving party."  *Brammer-Hoelter v. Twin Peaks Charter Academy*, 602 F.3d 1175, 1184 (10th Cir.

2010).  Its function at this stage is "not . . . to weigh the evidence and determine the truth of the

matter, but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 243.


### DISCUSSION

Because the Court has already ruled in favor of the Plaintiffs on the issue of liability, all

that remains is to determine the relief to which Plaintiffs are entitled.  Section 502(g)(2), 29

U.S.C. § 1132, of ERISA provides that, in cases such as this one, "in which a judgment in favor

of the plan is awarded, the court shall award the plan--

(A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of–

(i) interest on the unpaid contributions, or

(ii) liquidated damages provided for under the plan in an amount not in excess of 20
percent . . .

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

ERISA § 502(g)(2), 29 U.S.C. § 1132.  As set forth above, Defendant does not specifically

controvert the methodology by which Plaintiff arrives at its calculations as to the monies owed

through September 12, 2012 (in fringe benefit contributions), October 8, 2012 (in interest,

liquidated damages, and late filing fees), and October 10, 2012 (in attorneys' fees, audit fees,

and court costs).  Rather, Defendant sets forth its own, truncated calculations of the delinquent

contributions owed, which it contends reflects an oral modification that the parties made to the

CBA.  Further, Defendant argues that Plaintiffs have waived their right to be reimbursed for

attorneys' fees by filing this lawsuit prematurely.  The Court will address each of Defendant's arguments in turn.

I.   **Defendant's Argument That Fringe Benefit Calculations Should Distinguish Between Union and Non-Union Employees**

First, Defendant argues that it owes less in fringe benefit contributions than Plaintiffs contend, because Plaintiffs' calculations include delinquent contributions for all workers staffed on projects, including non-union members.  According to Defendant,  Article XX of the CBA permitted Defendant "to work with a composite crew [composed of] both union and non-union employees" and required it to make fringe benefit contributions only for the union members. (Doc. 76 at 5).  Defendant does not identify, otherwise describe, or attach to its brief the provision of Article XX that supports its position.  Further, Defendant claims that it had an oral agreement with representatives of Local 49 – it is unclear whether Defendant refers to Plaintiffs – to make certain non-unionized sheet metal workers hired by Defendant members of Local 49; that not all these workers were eventually given union membership; and that Local 49 representatives "knew" that Defendant was nevertheless employing non-union members on sheet metal projects and "was not making contributions for non-union employees."  *Id*. at 6.  Thus, Defendant implies, Plaintiffs – or some other unidentified representatives of Local 49 – implicitly permitted the practice of deducting contributions for non-union members.

The Court finds both of Defendant's arguments to be equally without merit.  First, Article XX of the CBA, which is titled "Composite Crews," states in its entirety:

> When working in a composite crew with other crafts on industrial jobs, sheet metal workers will receive wages that match the highest total wage package, including hazard pay, travel time, mileage, zone or subsistence.

11

(Doc. 79 Ex. 4-A at 55). The Court finds nothing in Article XX allowing Defendant to employ a composite crew of union members and non-members. The significance of Article XX is plainly to provide that when *sheet metal* workers are working in a composite crew with workers in "other crafts," they will be entitled the "highest total wage package." The distinction is between sheet metal workers and workers in other crafts, not between union- and non-union members; moreover, the provision has nothing to do with fringe benefits.

Further, the Court finds Defendant's claim that the parties had an oral contract allowing it to employ non-union sheet metal workers and avoid making contributions for them – an argument that appears for the first time in its response brief – to be irrelevant to the disposition of this motion. Defendant cites no legal authority for the position that an oral agreement can supersede the terms of a CBA entered into under ERISA.

The Court agrees with Plaintiffs that Defendant's argument amounts to a claim for breach of contract and, as such, is preempted by ERISA § 515, 29 U.S.C. § 1145 ("Every employer who is obligated to make contributions to a multiemployer plan . . . under the terms of a [CBA] shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement."). Plaintiffs proffer a number of cases holding that § 515 "hold[s] employers and unions to the literal terms of their written commitments." (Doc. 79 at 3) (quoting *Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018, 1021 (4th Cir. 1997)). As the Fourth Circuit held in *Bakery & Confectionery*:

> Because an employer's obligation to a multiemployer fund is determined by the plain meaning of the language used in the collective bargaining agreement, the actual intent of the contracting parties (i.e., the employer and the local union) is immaterial when the meaning of that language is clear.
>
> Consequently, an employer is not permitted to raise defenses that attempt to show that the union and the employer agreed to terms different from those set forth in

> the agreement. . . . By allowing multiemployer funds to enforce the literal terms
> of an employer's commitment, section 515 increases the reliability of their income
> streams, reduces the cost and delay associated with collection actions, and
> reduces or eliminates the cost of monitoring the formation of collective
> bargaining agreements.

*Id.* at 1021-22 (citations omitted); *see also Central States, Southeast & Southwest Areas Pension Fund v. Indep. Fruit and Produce*, 919 F.2d at 1349, 1352-53 (8th Cir. 1990) (parties to CBA were bound by the terms of their agreement, regardless of their undisclosed intent); *Central States, Southeast and Southwest Areas Pension Fund v. Gerber Truck Service,* 870 F.2d 1148, (7th Cir. 1989) (refusing to enforce oral agreement between employer and union); *Teamsters Indus. Employees Welfare Fund v. Rolls-Royce Motor Cars, Inc*., 989 F.2d 132, 138 (3d Cir. 1993) ("[t]he special status of multiemployer funds allows them to rely on the unambiguous written agreements presented to them"); *Straub v. Western Union Tel. Co.*, 851 F.2d 1262, 1264 (10th Cir. 1988) ("no liability exists under ERISA for purported oral modifications of the terms of an employee benefit plan").  This Court follows established precedent in concluding that Plaintiffs are entitled to enforce the CBA as written.

The question thus becomes whether the CBA permitted Defendant to hire non-union sheet metal workers and exclude them from fringe benefit contributions.  The Court has not found any provision of the CBA that permitted Defendant to hire non-members of Local 49 and exclude these non-union employees from fringe benefits, and Defendant points only – and unpersuasively –  to the "Composite Crews" provision of Article XX.  On the contrary, Article V, which is titled "Membership (Union) Requirement/Hiring Hall Procedures," specifically provides that Defendant "agrees to require membership in the Union, as a condition of continued employment of all employees . . . ."; *see also* Article IV (requiring union to "furnish, upon request by the Employer, duly qualified sheet metal journeymen . . . in sufficient numbers as

may be necessary to properly execute work contracted by the Employer.").

Accordingly, because Defendant may not rely on a purported oral modification of the CBA, the Court will not deduct from Plaintiffs' fringe benefits award on the basis of individual employees' purported non-union membership.


## II.    Defendant's Argument That Attorneys' Fees Should Be Denied

Defendant contends that attorneys' fees should be denied because Plaintiffs violated "the dispute resolution procedures set forth in Article X of the Local Union 49 CBA . . [and] instead decided to file suit in federal district court."  (Doc. 76 at 13).[4]  Defendant does not set forth the relevant section of Article X or outline the procedures Plaintiffs should have followed in these circumstances.  Moreover, Defendant does not cite any authority for the proposition that Plaintiffs waived their right to attorneys' fees by filing the instant lawsuit.  Plaintiffs respond that Article X is inapposite and that they are entitled to attorneys' fees incurred in obtaining the delinquent contributions under ERISA § 502.

The Court has reviewed Article X of the CBA, which is contained in the record as Exhibit 4-A to Plaintiffs' reply brief.  Article X is titled "Grievance Procedures" and  provides that "[t]he Union and the Employer, whether party to this Agreement independently or as a member of a multi employer bargaining unit, agree to utilize and be bound by this Article." (Doc. 79 Ex. 4-A at 3).  Article X then proceeds to set forth the procedures for internal resolution of grievances between Defendant and Local 49, which is not a party to this case.  *See supra* at 3 n.1.  The Court finds the grievance procedures listed at Article X to be irrelevant to the issue of

---

[4]Defendant cites to Article X as "Exhibit M" to its response brief, but does not attach the relevant Article.

whether attorneys' fees should be awarded to Plaintiffs.  As Plaintiffs note, there is simply no

precedent for the proposition that trust funds are subject to the terms of a labor agreement

between an employer and a labor union, such that the trustees would be obligated to follow the

arbitration procedures applicable to the employer and the union itself.  On the contrary, the

Supreme Court has directed that

> [t]he enforcement mechanisms established in . . . trust agreements protect the
> collective interests of the parties from the delinquency of individual employers by
> allowing the trustees to seek prompt judicial enforcement of the contribution
> requirements.  It is unreasonable to infer that these parties would agree to
> subordinate those mechanisms to whatever arbitration procedures might be
> required by a particular employer's collective-bargaining agreement.

(Doc. 79 at 12) (quoting *Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364, 373-74

(1984)).

As set forth above, the remedies section of ERISA, § 502, provides that "[i]n any action

under this title by a fiduciary for or on behalf of a plan to enforce [S]ection 515 [29 U.S.C. §

1145] in which a judgment in favor of the plan is awarded, the court shall award the plan . . .

reasonable attorney's fees and costs of the action, to be paid by the defendant."  29 U.S.C. §

1132(g)(D).  Here, Defendant has admitted that it was delinquent in fringe benefit contributions

that it was required to make under the CBA, and the Court has found in favor of Plaintiffs on the

issue of liability.  *See* Doc. 44 at 3.  Accordingly, the Court finds that Defendant is obligated to

pay Plaintiffs' reasonable attorneys' fees pursuant to ERISA § 502(g).  *See, e.g., Building*

*Service Local 47 Cleaning Contractors Pension Plan, et al. v. Grandview Raceway, et al.,* 46

F.3d 1392, 1400-01 (6th Cir. 1995) ("[a]s this action was brought pursuant to 29 U.S.C. § 1145,

an award of reasonable attorneys' fees is mandated by 29 U.S.C. § 1132(g)(2)(D)").

**CONCLUSION**

In light of the foregoing, the Court awards Plaintiffs monetary and injunctive relief

pursuant to ERISA § 502(g)(2)(E), 29 U.S.C. § 1132(g)(2)(E), as follows:

(1)    $31,328.49 in fringe benefit contributions owed through September 12, 2012;

(2)     $10,688.56 in late filing fees, liquidated damages, and interest on the delinquent

        contributions, owed through October 8, 2012;

(3)     $5,688.94 in audit fees through October 9, 2012;

(4)    $1,594.77 in litigation costs through the filing of the instant motion;

(5)    attorneys' fees at an hourly rate of $300.00 for 204.17 hours of attorney time, for a total

        of  $61,251.00 in attorneys' fees, through September 26, 2012;

(5)    legal assistant fees at an hourly rate of $100.00 for 123.10 hours of legal assistant time,

        total of $12,310.00 in legal assistants' fees, through September 26, 2012;

(6)     $5,149.27 in total gross receipts tax, through September 26, 2012.

Defendant is **FURTHER ORDERED** to provide Plaintiffs with the following

information within five (5) days:

(7)    payroll reports for all sheet metal work performed from the date the CBA was executed;

        and

(8)     the names and relevant details of every sheet metal project on which it has worked from

        the date the CBA was executed, including the name and address of the general

        contractor/client.

Because Plaintiffs have not cited any authority for their requested cease-and-desist order,

Plaintiffs' request for such order is hereby denied.

**IT IS THEREFORE ORDERED** that Plaintiffs' *Motion for Summary Judgment*

*Against Defendant and Supporting Memorandum* (Doc. 68) is **GRANTED IN PART** and

**DENIED IN PART** as explained above.

_____
UNITED STATES DISTRICT COURT JUDGE